John L. Nofsinger, Appellant, v. Alfred D. Paup, Appellee.

Filed January 29, 1915.   No. 17,745.

1. **Assault and Battery: Right to Recover.**   The plaintiff, in an action for damages for an assault and battery, cannot recover when he is shown to have been the aggressor, unless the defendant, in repelling the plaintiff's assault, has used more force than would appear necessary to an ordinarily prudent man under like circumstances.

2. **Appeal: Affirmance.**   This court will not set aside the verdict of a jury as unsupported by the evidence, unless it is clearly wrong.

Rehearing of case reported in 96 Neb. 805. *Former judgment of reversal set aside, and judgment of district court affirmed:*

Barnes, J.

This was an action to recover for personal injuries sustained by the plaintiff for an assault and battery alleged to have been committed by the defendant. The defendant's answer was a denial and a plea of self-defense. By a former opinion (*Nofsinger v. Paup,* 96 Neb. 805), we held that the evidence was insufficient to sustain the verdict in favor of the defendant. A rehearing was allowed, the cause has been reargued and submitted, and the question now is: Shall we adhere to our former opinion?

It appears that on the 24th day of May, 1911, the plaintiff started from his home with a load of wheat to be delivered at Albion, which place lies about seven miles northeast of the plaintiff's premises. At the corner of the defendant's farm a boy named Adam Gardner got upon the wagon and rode with plaintiff to a point where the difficulty occurred. The plaintiff testified, in substance, as follows: I had

stopped about five times from the Paup corner to the hill, about 25 or 30 rods south of the Gardner place. I stopped at the bottom of the hill. I then made a pull and stopped perhaps 50 feet up the hill. I raised up to get off my wagon to start my team. While doing that I said: "They are playing thunder with these confounded drags." When I looked back I saw Mr. Paup with his spade up ready to strike. He was close to the east of his horses' heads, about eight feet from me. When I dropped my lines I turned, facing him. I came within about four feet diagonally northeast from the hub of my wheel. Paup said: "If you come an inch I will hit you with this spade." I was holding up my right hand to keep him from hitting me. I begged him not to hit me with the spade. He said: "I will hit you with the spade; I will hit you with the spade." And he said some foul words as he struck me. He said: "I will just kill you." There was scarcely a check from the first words spoken until I was hit.

The testimony of the defendant, relating to the commencement of the affray, was, in substance, as follows: On the morning of May 24, I went out and King-dragged the road. I noticed plaintiff's team over the hill. I knew he was prejudiced against us working the road. I did not want to meet him. I waited until he went north of the corner, about 40 rods from where I was. When I got on top of the hill he was about 60 rods ahead of me. When I saw him next he was about 30 rods ahead of me. When I got down there the horses began to slow up, and I looked up and said, "Whoa," and they stopped, and there was Mr. Nofsinger's team standing in the road. He turned round in the seat and said: "What in the devil do you want to be dragging these roads for all the time?" I finally says: "What's biting you?" He said: "There is a whole lot biting me." He climbed off the wagon with the whip in his hand and started toward me. I waited until he got back of the back end of his wagon, and he kept coming, and I waited until he got pretty near to the head of my horses, and I saw that he was going to come, and I had this shovel on there, and I picked it up and

warned him to stand back. I told him not to come any farther. He was then about 10 feet from me. I said: "Stand back or I will hit you." He was in front of me watching me, and I was looking at him. I warned him the second time. He kept crowding in on me. I warned him the third time to stand back, and he kept crowding up on me, and when I warned him the third time he made a rush at me like that, and I struck him with the spade. I do not know whether I hit him with the spade, or whether the spade came off and hit him, but anyway he rushed into me and commenced pounding me with the butt end of the whip, and he struck me across the face and over the head and kind of dazed me, and when I came to he had his thumb in my eye trying to gouge my eye out, and I jerked away from him and got my thumb in his mouth, and he bit me on the thumb, and I jerked away from him, and in some way or other I was trying to push him from me, and I got him by the shirt, and in the tussle I threw him down and was holding him down. He said: "You ought to be ashamed of yourself to hit an old man 52 years old." And I said: "You ought to keep a 52-year old man's place."

Adam Gardner, who was the only other witness who saw the encounter, testified, in substance, as follows: I was riding with Mr. Nofsinger. He had stopped his team there, and Paup came up behind him. Nofsinger used a vulgar and profane expression, and then said: "What are you always dragging up my tracks for?" Paup said: "What's biting you?" And Nofsinger went off his wagon with his whip in his hand and went back to him. Paup said: "Stand back or I will hit you." And he said: "I will dare you to hit me with the spade." Mr. Paup said three times, "Stand back." Nofsinger went right toward him, and he hit him over the head with the spade. Nofsinger fell and clinched Mr. Paup. That is all I saw, and I went into the house. Nofsinger was holding his hand up to his face. He had a broken-off piece of buggy whip three or four feet long in his hand. Paup moved

backward. They were 10 or 15 feet back of the hind wheel when the blow was struck with the spade.

The foregoing is the substance of the testimony describing how the encounter between the plaintiff and defendant took place. There was considerable other testimony, and the statements of the witnesses named were to some extent modified by cross-examination, but the above is a fair statement of what the testimony shows.

It must be conceded that Nofsinger was quite severely injured by the blow struck with the spade. His other injuries were comparatively slight. The defendant was also injured in the fight, but his injuries were not permanent. The case was submitted to the jury under proper instructions. In fact, the trial court submitted nearly all of the instructions requested by the plaintiff. Some of them were slightly modified, but, as we view the record, the modifications were properly made. The jury returned a verdict for the defendant, on which the trial court rendered judgment. By a reference to the testimony, it is apparent that the jury were of the opinion that the plaintiff was the aggressor, and that the defendant struck him in self-defense. If this was so, plaintiff could not recover, unless the defendant used more force than, under the circumstances, an ordinarily prudent man would be justified in believing was necessary to repel the assault, and the jury were apparently convinced that the force used by defendant was justifiable. We are unable to say that the jury were not justified in arriving at that conclusion.

Where a question is submitted to the jury upon conflicting evidence and upon proper instructions, the verdict will not be set aside by a reviewing court, unless it is clearly wrong. The evidence was substantially conflicting, and in such case the verdict of a jury should not be set aside on the ground of its being against the weight of evidence, unless it is clearly so, and more especially ought this rule to be observed by reviewing courts. Considering the charge to the jury as a whole, we find no prejudicial error in the instructions.

It follows that our former judgment should be, and is, set aside, and the judgment of the district court is af·firmed.

JUDGMENT ACCORDINGLY.

MORRISSEY, C. J., not sitting.

HAMER, J., dissenting.

Paup was driving a team behind Nofsinger and overtook nim. Both Nofsinger and Paup agree that Paup said to Nofsinger, "What's biting you?" Nofsinger testified that he said to Paup, "There is nothing biting me," that at the time he said this he thought his team was stuck. The ground was soft. Nofsinger further testified that when he first stepped off the wagon he was about even with the hind edge of the front wheel; that when he looked back "he saw Mr. Paup with his spade up ready to strike." He puts Paup about eight feet distant from him, and says that he (Nofsinger) dropped his lines and turned to face Paup; that Paup said to him, "If you come an inch I will hit you with this spade;" that he (Nofsinger) begged Paup not to hit him with the spade; that Paup said, "I will hit you with the spade; I will hit you with the spade;" that he said some foul words and wound up by saying, "I will just kill you."

Paup was 10 years younger than Nofsinger. Nofsinger complained because Paup struck a man who was older than he was. Paup himself testified: "I got him by the shirt, and in the tussle I threw him down and was holding him down." As long as Paup was 10 years younger and was able to throw him down, there does not seem to have been any necessity for striking him with the spade. Nofsinger had a 35-cent buggy whip. It could not have been of much force as a weapon.

Paup opened his defense with the statement that he had "grippe" and heart trouble and a bad cough. He testified he was uncertain whether he hit Nofsinger "with the spade, or whether the spade came off and hit him." The boy testified that Paup said to Nofsinger, "Stand back;" that Paup then went right toward him, and he hit him over

the head with it. Paup appears to have told Nofsinger, "You ought to keep a 52-year old man's place." The fact is uncontroverted that Paup hit Nofsinger with the spade. With its sharp edge he cut Nofsinger's head.

The defense in this case is, to the mind of the writer, very much of a sham. While it is for a jury to determine the merits of conflicting evidence, the jury has no right to render a verdict that is not sustained by the evidence. The defendant very seriously injured the plaintiff. I have been wholly unable to find any justification for his conduct. I thing he ought to pay for it.

Dr. Thompson testified that Nofsinger was "in a condition of shock and collapse; he was quite pale and very nervous; there was some blood on his face and head, and on the scalp here on the right side, a little to the right of the middle line, there was a cut which by measurement was three inches in length, reaching through the entire thickness of the scalp, to the bone, and some bruises or abrasions on his face and neck." The doctor also testified that he put "five stitches in the scalp wound." Later there was a partial paralysis of the left leg. Nofsinger's speech became incoherent and broken. His bladder was affected, and he was unable to retain his urine. His injuries seem to have been permanent.

The court gave the following instructions upon its own motion:

"(4) The fact that defendant struck plaintiff a blow on the head with a spade is not controverted by the proofs, hence there are but two questions left for your determination, viz.: First. Was said blow struck in self-defense as hereinafter explained? And, second, if you determine such fact in the negative, then you are to determine whether the plaintiff has sustained damages by reason thereof, and, if so, the amount of such damage.

"(5) Upon the question as to whether said blow was struck in self-defense, the burden of proof is upon the defendant, and, to justify you in so finding, the jury should be satisfied, from a preponderance of the evidence, that the blow was struck in self-defense. If upon this question the

evidence is evenly balanced, or if it preponderates in favor of the plaintiff, your finding should be for the plaintiff."

The foregoing instructions seem to relate to each other. These instructions may be criticized because they lay down no rule of any kind by which the jury are instructed as to what is "self-defense." They are left to roam at will. If they conclude that the blow was struck in self-defense, there is nothing more to be done, although they are not told what will justify the striking. The jury are left to determine the law upon this subject for themselves.

The 6th instruction reads: "Upon the question as to whether the plaintiff has sustained damages by reason of the blow struck by defendant, and as to the amount of such damages, if any you shall find, the burden of proof is upon the plaintiff; and before you would be justified in assessing damages in his favor you must be satisfied from the evidence, and by a preponderance thereof, that he has sustained damages in some amount, as a result of said blow, and you must be further satisfied, as explained in the next preceding paragraph of these instructions, that said blow was not struck in self-defense."

This instruction permits the jury to tide over any amount of injury by coming to the conclusion that the blow might have been struck in self-defense. It tethers them nowhere. The judge in effect tells the jury that Paup had a right to cut his head with the spade, provided he thought that he was acting in self-defense.

Instruction No. 9½ would seem to be a license to the defendant upon the theory that his physical condition was not good. This instruction substantially told the jury that they could "take into account his physical condition" (meaning the defendant's physical condition) and compare it with that of the plaintiff, although there was no testimony whatever upon which to base such a comparison. This instruction must have been highly prejudicial. It is indefensible. It reads: "In the determination of the question whether the defendant used unreasonable force or means to defend himself, it is proper for you to take into account his physical condition,

as disclosed by the evidence at the time, and as compared with that of the plaintiff."

The following instruction requested by plaintiff was refused: "(1) You are instructed that this action has no relation whatever to any other action or litigation, and you are instructed that you must disregard any reference to any former action." It is difficult to understand upon what ground this action was taken.

The court also refused to give the following instruction requested by the plaintiff: "(3) The jury are instructed that, if they find for the plaintiff, then, in assessing his damages, they are at liberty to take into account the character and extent of plaintiff's injuries, so far as they have been proved by the evidence, the pain and suffering endured by him, if any, in consequence of such injury, his loss of time and cost of medical attendance, and award such damages as will fully and fairly compensate the plaintiff for his suffering and loss, if any, in view of all the facts and circumstances proved, not exceeding the sum of $11,500." It would seem that an instruction of this nature should have been given.

Instruction No. 6, requested by the plaintiff and refused, reads as follows: "The court instructs the jury that, if you find from a preponderance of the evidence that at the time of the encounter the plaintiff and defendant were men of about equal size, that they occupied common ground, that the plaintiff had no apparent advantage over the defendant, that the plaintiff was not armed with any dangerous or deadly weapon with which he might have killed or seriously injured the defendant, and that the plaintiff, prior to the time of being struck on the head with a spade by defendant, had made or uttered no threat against the defendant, nor made any effort to strike or injure the defendant, under such circumstances the action of the defendant in striking plaintiff with the spade is wholly without justification in law, and his plea of self-defense is of no avail."

Instruction No. 15, requested by the plaintiff and refused, reads: "You are instructed that, if a party enters

into a fight dangerously armed and fights with undue advantage over his antagonist, even though mutual blows pass, if he strikes his adversary with a dangerous weapon pursuant to a previously formed design to use such weapon in case of emergency in which his life would not be endangered, or he would not be in danger of suffering great bodily injury, it is not self-defense, and he is liable in damages."

Instruction No. 16, requested by the plaintiff and refused, reads: "You are instructed, to make a plea of self-defense available, the defendant must be without fault. If he was himself the aggressor, he cannot invoke the doctrine of self-defense, even if the plaintiff was approaching him in a hostile manner; and whether the necessity to strike the plaintiff was real or only apparent, if brought about by the design, contrivance or fault of the defendant, he cannot be excused on the plea of self-defense."

It should be remembered that an impartial consideration of the evidence in this case might lead to the conclusion that these men fought by consent. While the plaintiff may have been willing to fight, he was not armed with a dangerous weapon. He had a little broken buggy whip. He could not have seriously injured the defendant. The defendant was armed with a spade. In law a spade is a deadly weapon. It is as dangerous as a dagger, a revolver, or a cleaver. The language used by the trial court in instructing the jury was such as to confuse their ideas concerning the matter.

The first point to determine is which of the parties was the aggressor, or whether the plaintiff attempted any thing more than mere talk. In this connection it should not be lost sight of that the defendant was in no great danger if the plaintiff did not attempt to strike him. He could not jump to the conclusion that he was going to be struck until there was an actual demonstration of some kind. Second, he was in no danger as long as the plaintiff had in his hand an insignificant little whip. No mere threat justified the use of the spade, if the plaintiff stood away and talked. Even though he had the whip, there was no justification

in the defendant using the spade. Before using the spade
the defendant was bound to retreat to the wall; that is,
he was bound to avail himself of any apparent and reason-
able avenue of escape. He was not permitted to make a
chopping block of the plaintiff because the plaintiff seemed
to be out of humor.

At the request of the defendant the court gave four in-
structions, calculated apparently to excuse the defendant
for using the spade. Much time and care were no doubt
expended by defendant's counsel in the construction of
these instructions. Their effect was to tell the jury to
excuse the defendant for what he did. In three of these
instructions they excuse him for using a great degree of
force. Three of these instructions came right along one
after another as a man might pound with a maul or sledge-
hammer. They all hit the same place, the wedge, intended
to divide the plaintiff from any chance to recover. The
three of them which we intend to discuss together read:

"(1) You are instructed that when a person is attacked
by another in such manner as to excite in him a reasonable
belief that he is in danger of receiving serious bodily in-
jury, or that he will sustain thereby serious loss or damage
to his property, he may lawfully resist the attack by em-
ploying such reasonable means within his power as are
apparently necessary to defend himself and protect his
property. He is not required to weigh or measure the
degree of force necessary to that end to a nicety or with
exactitude; all that is required of him in that respect is
that he act as a man of ordinary care and prudence,
situated as he was at the time, would have acted.

"(2) You are instructed that, while the law will not
justify the use of more force than is reasonably necessary
to repel an attack, still it does make a reasonable allow-
ance for the infirmity of human judgment under the in-
fluence of sudden passion, provocation, or fear, and does
not require a man to reason with mathematical exactness
the degree of force necessary to repel an attack upon him-
self.

"(3)   You are instructed that, when a person is threat-
ened with an assault upon himself, he has a right to defend
against the same, and to use such force as, in view of all
the circumstances, is reasonably necessary to that end.
He is not required to weigh and calculate to a nicety the
exact amount of force to use, but merely to use such care
and caution as a reasonably careful and prudent man in
like circumstances would use."

The first idea in the first of the above instructions is
that the defendant is permitted to exercise a "reasonable
belief" of danger.  If he had such belief, which an angry
man could easily have, then he is at liberty to use the
spade on the plaintiff's head.  The second idea in that
instruction is that he is made the judge of what is "reason-
able means" and "apparently necessary" to defend him-
self.  Then comes the part which cannot help releasing the
defendant from liability in the minds of the jury.  The
jury are told that the defendant may make a mistake about
it and may use more force than is necessary, but it will
still be all right.  The actual language used is:  "He
is not required to weigh or measure the degree of force
necessary to that end (protection) *to a nicety or with
exactitude.*"  In the next instruction the judge still whacks
away on the question of "exactness" not being required to
measure the force necessary.  He first says that, "while
the law will not justify the use of more force than is
reasonably necessary," yet it will make "a reasonable al-
lowance for the infirmity of human judgment under the
influence of sudden passion, provocation, or fear."  Was
ever a thing better devised than that to excuse the violence
of the defendant?  But the learned judge does not stop
here.  He goes on to say in addition that a man, under
such circumstances, is not required "to reason with mathe-
matical exactness the degree of force necessary to repel an
attack upon himself."  That is the cap sheaf.  I have never
seen a more labored effort to justify an assaulting party
than the foregoing.  But he was just getting a good start,
for in the third instruction the jury are told that he has

97Neb.39

a right to defend himself when *"threatened"* with an assault;" that in such case "he is not required to weigh and calculate to a nicety the exact amount of force to use." Three times in succession this matter of nicety or exactitude is gone over. Each time the jury are told "it don't make any difference."

But, fearing that he had not made it quite strong enough, the judge goes after the jury in the fourth instruction requested by the defendant. In that instruction the defendant is justified in defending himself merely if the plaintiff "approached" him. It is not required that he actually do anything in order to justify the defendant's attack with a spade. It is quite enough if the manner of the plaintiff is "menacing and threatening."

These instructions were not reviewed in the former opinion because the evidence seemed insufficient to justify the verdict.